UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO POLICY NO. ML144200000673,<br><br>      Plaintiff,<br><br>v.<br><br>HARAMOS REALTY, LLC, KAPPA, INC., formerly d/b/a OLDE THEATER DINER, and P. DAVID BESTWICK<br><br>      Defendant. | CIVIL ACTION NO. 20-cv-175 |

**COMPLAINT FOR DECLARATORY RELIEF**

1. In this matter, Plaintiff Certain Underwriters at Lloyds, London ("Underwriters") has done everything that is required of an insurer, and more. Notwithstanding the lack of insurance coverage, Underwriters has been (and still is) defending its insured (Defendant Haramos Realty, LLC) ("Haramos") in the personal injury case that was brought against Haramos, Underwriters issued multiple reservation of rights letters to Haramos, it conducted an investigation of the facts relating to coverage, it approved and agreed to pay <u>Beals</u> counsel for Haramos, and agreed to attend mediation and contribute to a settlement in an amount that accounts for its coverage defenses. The response from Haramos has been to ignore the numerous letters from Underwriters requesting information and documentation and then provide incomplete information when it did respond, and to make unsupported allegations of bad faith. By way of this action, Underwriters seeks a declaration, pursuant to 28 U.S.C. § 2201, that Haramos is not entitled to insurance coverage for the claims asserted in the personal injury matter of <u>P. David Bestwick v. Haramos Realty, LLC, Alias; Kappa, Inc., d/b/a, Olde Theater</u>

<u>Diner, Alias; and John Doe, Corporation</u>, C.A. No. K.C.-2017-1125, Rhode Island Superior Court.

## PARTIES

2. The Plaintiff, Underwriters, is a business entity organized and existing under the law of England and Wales with a principal place of business located at One Lime Street, London, England.

3. The individual underwriters of the insurance policy that is the subject of this action are Ark Syndicate Management Limited ("Ark") and Canopius Managing Agents Limited ("Canopius").

4. Ark is a foreign private limited company organized and existing under the laws of England and Wales with its principal place of business in the London, United Kingdom. Ark is an underwriting member of Lloyd's of London Syndicate No. 3902, which subscribed to insurance policy ML144200000673 issued to Haramos.

5. The members of Ark are individuals who are all citizens of the United KingdOM.

6. Canopius is a foreign private limited company organized and existing under the laws of England and Wales with its principal place of business in London, United Kingdom. Canopius is an underwriting member of Lloyd's of London Syndicate Nos. 4444 and 0958, which subscribed to insurance policy ML144200000673 issued to Haramos.

7. The members of Canopius are individuals who are all citizens of the United Kingdom.

8. The Defendant, Haramos, is a Domestic Limited Liability Company licensed to do business within the state of Rhode Island with a principal place of business located at 15 Sandy Bottom Road, Coventry, RI.

9. The sole manager of Haramos is an individual named George Melanis, who is a citizen of the state of Rhode Island.

10. The Defendant, Kappa, Inc., formerly d/b/a Olde Theater Diner, is a Domestic Profit Corporation incorporated in the state of Rhode Island with a principal place of business located at 1104 Harvard Place, Fort Lee, NJ, and with a local resident agent located at 536 Atwells Avenue, Providence, Rhode Island.  Kappa, Inc. is a necessary party to this action as it is a named defendant in the Underlying Case with an interest in the outcome of that matter.

11. The Defendant, P. David Bestwick, is an individual who is a citizen of the state of Rhode Island residing at 85 Acres of Pine Rd., Coventry, RI.  P. David Bestwick is a necessary party to this action as he is the named plaintiff in the Underlying Case with an interest in the outcome of that matter.

## JURISDICTION

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000).  The parties to this Complaint are and have at all relevant times been citizens of different states, Plaintiffs being citizens of the United Kingdom and Defendants being citizens of Rhode Island and New Jersey.

13. This Court has personal jurisdiction over this matter as the Defendants are citizens of Rhode Island, the Defendants have maintained continuous and systematic contact with Rhode Island, and both the present coverage action and the underlying case arises out of the Defendants' contacts with Rhode Island.  An actual controversy exists between Plaintiff and Defendants as to the rights and responsibilities of the parties under a contract of insurance, and thus, this Court may declare the rights and legal obligations of the parties pursuant to 28 U.S.C. § 2201.

## VENUE

14. Venue is appropriate in the District of Rhode Island under 28 U.S.C. § 1391 because the Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to this Complaint occurred within this judicial district.

## STATEMENT OF FACTS

### THE UNDERLYING CASE

15. The present insurance coverage case arises from an alleged slip and fall that is the subject of litigation in the matter captioned P. David Bestwick v. Haramos Realty, LLC, Alias; Kappa, Inc., d/b/a, Olde Theater Diner, Alias; and John Doe, Corporation, C.A. No. K.C.-2017-1125, Rhode Island Superior Court (the "Underlying Case").

16. The claims of P. David Bestwick ("Bestwick") in the Underlying Case stem from an alleged slip and fall on ice that occurred on February 28, 2015 in a parking lot adjoining the property located at "33" Sandy Bottom Road, Coventry, Rhode Island (the "Property"). (Complaint, attached hereto as Exhibit A ¶¶ 5-7).

17. The Property is allegedly owned by Haramos.

18. Pursuant to a lease agreement for "35" Sandy Bottom Road, dated December 1, 2009, George Melanis, as the principal of Haramos, agreed to lease the premises to "Zarokostas Realty LLC d/b/a/ Old [*sic*] Theatre Diner," as lessee, for the stated purpose of operating a restaurant. (Lease Agreement attached hereto as Exhibit B at "Statistics" page).

19. The Lease Agreement was effective from December 1, 2009 to November 30, 2014. (Exhibit B at "Statistics" page).

20. On May 28, 2014, the rights and obligations of Zarokostas Realty, LLC under Lease Agreement were assigned to Kappa, Inc. ("Olde Theater Diner") pursuant to the

"Addendum that the Lease Dated December 1, 2009 Between George Melanis and Zarokostas Realty, LLC d/b/a Olde Theater Diner." (Lease Addendum attached hereto as <u>Exhibit C</u>).

21. As part of the Lease Addendum, Olde Theater Diner exercised its right as Lessee to renew the Lease Agreement in accordance with the First Option to Renew contained in Paragraph 28 of the Lease Agreement. (<u>Exhibit C</u>, at Page 2, Paragraph 5). By exercising the First Option to Renew, the Lease Agreement was extended through November 30, 2019. (<u>Exhibit B</u> at Page 17, Paragraph 28).

22. Under the terms of the Lease Agreement, the parties agreed that the "Lessee [Olde Theater Diner] shall be responsible for snow plowing of the parking areas serving the leased premises and removal of snow and ice on any sidewalks and pathways around the leased premises." (<u>Exhibit B</u> at page 5).

23. Under the terms of the Lease Agreement, the parties agreed that "Lessee [Olde Theater Diner] shall be required to provide comprehensive liability insurance, naming the Lessor [Haramos] as an additional insured party, with an insurance company licensed to do business in the State of Rhode Island in accordance with the provisions of paragraph 9 hereof." (<u>Exhibit B</u> at page iii). Paragraph 9 of the Lease Agreement provides, in pertinent part:

> i. Lessee agrees to maintain in full force at all times during the term hereof a policy of comprehensive general liability insurance (including personal injury) under which Lessor (and such other persons [who] are in privity of estate with Lessor as may be set out in notice from time to time) and Lessee are named as insureds, and under which the insurer agrees to indemnify and hold Lessor, and those in privity of estate with Lessor, harmless from and against all cost, expense and/or liability arising out of or based upon any and all claims, accidents, injuries and damages mentioned above. Each such policy shall be non-cancelable with respect to Lessor and Lessor's said designees without ten (10) days prior written notice to Lessor, and a duplicate original or certificate thereof shall be delivered to Lessor at any time or from time to time upon Lessor's request. The minimum limits of liability of such insurance shall be

>not less than Five Hundred Thousand ($500,000.00) Dollars with respect to death or injuries to any one (1) person and not less than One Million ($1,000,000.00) Dollars with respect to injuries suffered in any one (1) accident…[.] Lessee shall deliver to Lessor certificates of such insurance certifying the same is in full force.

(Exhibit B at pages 6-7).

24. Bestwick alleges that, contrary to the Lease Agreement and apart from Haramos's role as landlord for the Property, Olde Theater Diner had an agreement and contract with Haramos, whereby Haramos agreed to maintain the Property, which included keeping the parking lot and surrounding areas safe and clear of snow and/or ice. (Exhibit A at ¶ 5-6).

25. Bestwick filed a Complaint on October 24, 2017 alleging negligence and breach of contract against Haramos and Olde Theatre Diner. (Exhibit A).

26. Bestwick seeks damages from his fall, including monetary damages and consequential damages, under his breach of contract theory, as well as interest, costs and attorney's fees. (Exhibit A at ¶¶ 10 and 14).

27. In the Underlying Case, Olde Theatre Diner asserts crossclaims against Haramos for breach of contract, indemnification, and contribution. Olde Theater Diner alleges that Haramos owns the parking lot and was responsible for maintaining the area where Plaintiff fell. Olde Theater Diner states that it paid Haramos to remove the snow and ice from the parking lot, but that Haramos breached its agreement by failing to remove the snow and ice.

28. Mr. Melanis did the snow removal himself at the Property by use of an unregistered pickup truck. He also applied salt and sand by hand to the parking lot and occasionally used a snow blower. Haramos denies all liability for the injuries to Bestwick.

29. Discovery in the Underlying Case revealed that Mr. Melanis used anywhere from one to three trucks to remove snow from the Property.

### GENERAL LIABILITY INSURANCE POLICY OF HARAMOS

30. Underwriters issued Commercial General Liability Policy Number ML144200000673 to Haramos with effective dates from May 5, 2014 to May 5, 2015 (the "Policy"). The Policy provides commercial general liability coverage on an occurrence basis with aggregate limits of liability of $1,000,000 per each occurrence and an aggregate limit of liability of $2,000,000. (Policy attached hereto as <u>Exhibit D</u>).

31. The Policy contains a Schedule of Properties listing the Insured's "Premises" as including 35 Sandy Bottom Road. (<u>Exhibit D</u> at "Schedule of Properties"). The Schedule does not include 33 Sandy Bottom Road, the address listed in the Underlying Case as the location of the accident.

32. Pursuant to Commercial General Liability policy form CG 00 01 12 07, Section I – Coverages provides liability coverage, in pertinent part, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

1009070\305580253.v1

33. The Policy contains Commercial General Liability Form ARK-GL-009, Lessors Risk Only Endorsement, which provides:

> This policy is written on a Lessors Risk Only basis and as such it is written and priced on the basis that your "tenant(s)" carry liability insurance to protect you as well as them. Within the lease agreement between yourself and the "tenant(s)" there must be a requirement that the "tenant(s)" carry Commercial General Liability insurance that provides;
>
> (a) Limits greater than or equal to the limits of this policy, and
>
> (b) Names you as an Additional Insured on their policy.
>
> Your "tenant(s)" must furnish you with a Certificate of Insurance clearly showing the above. Parking Lot(s) or other land or premises owned by you and leased to "tenant(s)" must be included in such "tenant(s)" insurance. Failure to comply with this condition voids coverage under your policy.
>
> "Tenant(s)" is defined as Commercial tenant(s) only and does not apply to residential tenant(s).
>
> All other terms and conditions of this policy remain unchanged.

34. Haramos and Mr. Melanis were not acting as Lessors as to the removal of snow in the parking lot as the responsibility for clearing snow from the parking lot under the Lease belonged to the tenant, Olde Theater Diner. Rather, Mr. Melanis allegedly assumed this responsibility outside the Lease and was paid by Olde Theater Diner for snow removal outside the rent Haramos received for the premises.

35. Pursuant to Commercial General Liability policy form CG 00 01 12 07, Section I – Coverages, liability coverage afforded by the Policy is subject to an "Auto" Exclusion that is amended and modified by Commercial General Liability Form ARK-GL-0001A, Combination GL Endorsement – Non Contractors, which precludes coverage as follows:

> In consideration of the premium charged this insurance does not apply to, and there is no duty on us to defend you for, "bodily injury", "personal injury", "advertising injury", medical payments

or any injury, loss or damages, including consequential injury, disease or illness, alleged disease or illness, "suit", expense or any other damages, for past, present or future claims arising out of, caused by or contributed to…by the ownership, non-ownership, maintenance, use or entrustment to others of any aircraft, "auto", watercraft, snowmobile, all terrain vehicles (ATV) or motorcycle. Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

36. Pursuant to Commercial General Liability policy form CG 00 01 12 07, Section V – Definitions, the Policy defines "auto," in relevant part as, "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment…." The exceptions to the "Auto Exclusion" do not apply in this case.

37. Pursuant to Commercial General Liability Form ARK-GL-0001A, Combination GL Endorsement – Non Contractors, J., "this insurance does not apply to claims arising out of breach of contract, whether oral or written, express or implied, implied-in-law, or implied-in fact contract."

38. Pursuant to Commercial General Liability Form ARK-GL-0001A, Combination GL Endorsement – Non Contractors, the Policy does not apply to, and there is no duty to defend for, "bodily injury" arising out of, caused by or contributed to:

**A. Undeclared Operations, Premises or Locations**

i. by premises or locations owned, leased or rented by the insured that are not scheduled in the policy; or

ii. by operations or "products-completed operations hazard" not included in the Classification schedule in the policy, whether or not such operations or "products-completed

operations hazard" are continuous, intermittent, incidental, temporary or seasonal in nature.

39. Haramos did not disclose to Underwriters that it was in the snow removal business and the Underwriters Policy did not include this classification on the Policy.

40. Pursuant to Commercial General Liability policy form CG 00 01 12 07, Section IV – Commercial General Liability Conditions as amended by Commercial General Liability Form ARK-GL-0001A, Combination GL Endorsement – Non Contractors, "[i]f other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited," such that the Policy is excess over any other insurance.

41. Pursuant to Commercial General Liability policy form CG 00 01 12 07 Section IV – Commercial General Liability Conditions, subsection 2.c.(3), Haramos agreed to "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" Furthermore, the Policy additionally provides, under subsection 2.c.(4) of Section IV, that Haramos must "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

## THE COVERAGE DISPUTE

42. Underwriters retained William Joseph Flanagan, Esq. and Amy Parker, Esq. of Morrison Mahoney, LLP as defense counsel to defend Haramos in the Underlying Case.

43. On August 13, 2018, counsel for Underwriters sent a letter by Certified Mail to Haramos at the address identified on the declaration page of the Policy[1] setting forth a summary

---

[1] 8 Nooseneck Rd., West Greenwich, RI 02817

of Underwriters' coverage investigation, identifying the coverage issues, requesting additional information and documentation regarding Haramos' claim for coverage, and reserving all of its rights, remedies, and defenses under the Policy. A copy of the letter was sent to Haramos' defense counsel in the Underlying Case.

44. The additional information and documentation requested by Underwriters in its counsel's August 13, 2018 letter included, in pertinent part, the following:

  i. Any documentation confirming the address of the Olde Theatre Diner and confirming that the injury occurred at that specific location;

  ii. A copy of Olde Theater Diner's Commercial General Liability policy in effect at the time of the alleged incident;

  iii. Any written agreement and documentation (or information as to any oral agreement) between Haramos and Olde Theatre Diner as to the snow removal;

  iv. A copy of any automobile insurance policy issued for the pickup truck or snow blower in effect at the time of the alleged incident; and

  v. A copy of any insurance policy issued with respect to Haramos's operations or property located at 15 Sandy Bottom Road, Coventry, Rhode Island in effect at the time of the alleged incident.

45. On August 28, 2018, Underwriters resent its August 13, 2018 letter to Haramos by regular mail after its certified mailing of the letter to Haramos proved unsuccessful. This letter was not returned as undeliverable to Underwriters' counsel.

46. On October 2, 2018, after Underwriters received no response from Haramos to its request for additional information and documentation regarding Haramos' claim for coverage, Underwriters forwarded a copy of its August 13, 2018 letter to Haramos at 15 Sandy Bottom Rd, Coventry, RI.  This letter was not returned as undeliverable to Underwriters' counsel.

47. On February 11, 2019, after Underwriters received no response from Haramos to its request for additional information and documentation regarding Haramos' claim for coverage,

Underwriters forwarded another copy of its August 13, 2018 letter to Haramos at 15 Sandy Bottom Rd, Coventry, RI. The February 11, 2019 letter restated Underwriters' requests for additional information and documentation regarding Haramos' claim for coverage.  The letter also provided Haramos with notice of its obligation to cooperate with Underwriters in its investigation of its claim as set forth in the Policy.  A copy of the letter was sent to Haramos' defense counsel in the Underlying Case. This letter was not returned as undeliverable to Underwriters' counsel.

48. On February 21, 2019, after Underwriters received no response to its request for additional information and documentation regarding Haramos' claim for coverage, Underwriters forwarded a copy of its February 11, 2019 letter and its enclosures to Haramos at every other address (eight of them) then known to Underwriters as listed on the Schedule of Locations on the Underwriters Policy.[2] A copy of the letter was sent to Haramos' defense counsel in the Underlying Case. The letters sent to 8 Nooseneck Hill Rd., West Greenwich, RI 02817 and 12 Nooseneck Hill Rd., West Greenwich, RI 02817 were returned as undeliverable to Underwriters' counsel.  The remaining six letters were not returned as undeliverable to Underwriters' counsel.

49. On March 29, 2019, Haramos's defense counsel provided Underwriters' coverage counsel with contact information for Haramos' private counsel, Nicholas Lambros, Esq.

50. On April 2, 2019, counsel for Underwriters spoke with Attorney Lambros by phone, emailed him copies of the August 13, 2018, October 2, 2018, and February 11, 2019

---

[2] 35 Sandy Bottom Road, Coventry, RI  02816; 8 Nooseneck Hill Road, West Greenwich, RI 02817; 12 Nooseneck Hill Road, West Greenwich, RI 02817; 2260 Flat River Road, Building 1, Coventry, RI 02816; 2260 Flat River Road, Building 2, Coventry RI 02816; 2258 Flat River Road, Coventry, RI 02816; 2400 Putnam Pike, Chepachet, RI  02814; and 2406 Putnam Pike, Chepachet, RI  02814.

letters, and restated Underwriters' requests for additional information and documentation regarding Haramos's claim for coverage.

51. On June 24, 2019, after Underwriters received no response from Haramos or Attorney Lambros to its request for additional information and documentation regarding Haramos's claim for coverage, it sent Mr. Melanis a request for an Examination Under Oath.

52. On July 8, 2019, Haramos' defense counsel provided counsel for Underwriters a copy of the policy providing coverage to Olde Theater Diner after obtaining it through discovery and motion practice in the Underlying Case.

53. The policy covering "Kappa, Inc. d/b/a Old [sic] Theater Diner" at the time of the incident does not name Haramos as an Additional Insured, as required by the Lease and by the Underwriters Policy.  (Policy No. LCPKR00455 attached as Exhibit E) ("Olde Theater Diner Policy").

54. On July 10, 2019, counsel for Underwriters followed up with Attorney Lambros to confirm his client would be made available for the Examination Under Oath.

55. On July 25, 2019, Attorney Lambros informed Underwriters' counsel that Mr. Melanis would not be appearing for his Examination Under Oath.

56. On September 16, 2019, Underwriters sent a letter to Attorney Lambros and Attorney Parker setting forth an updated summary of its present coverage investigation, including information it had recently received from the Underlying Case indicating that there was no coverage for Haramos.

57. On September 18, 2019, Attorney Lambros responded to the September 16, 2019 letter by stating that he does not represent Haramos with regard to Underwriters' coverage investigation, but that he would share the September 16, 2019 letter with Mr. Melanis.

58. On September 24, 2019, Paul Sullivan, Esq. sent a letter to the adjuster from a third-party administrator hired by Underwriters and assigned to handle the defense of Haramos in the Underlying Case. Attorney Sullivan reported his intention to enter his appearance in the Underlying Case as personal counsel of Haramos, and requesting that he be compensated by Underwriters in accordance with Employer's Fire Ins. Co. v. Beals, 240 A.2d 397 (RI 1968). Attorney Sullivan was approved as Beals counsel and Underwriters agreed to pay him for those services.

59. On September 27, 2019, Attorney Parker provided counsel for Underwriters' with the transcript of the Rule 30(b)(6) deposition of Haramos given by Mr. Melanis on September 11, 2019.

60. Mr. Melanis testified that another entity with which he was associated, Palamidi, LLC, owned another building that used the same parking lot as the Olde Theater Diner. Palmidi, LLC is not an insured under the Underwriters Policy.

61. In October of 2019, counsel for Underwriters emailed Attorney Sullivan copies of letters sent to Haramos in August 2018, February 2019, and September 2019, as well as a description of the information and documentation requested from Haramos regarding its claim for coverage.

62. From October 2019 to March of 2020, correspondence was exchanged between Underwriters' counsel and Beals counsel for Haramos, with Underwriters repeatedly asking for information (much of the same information it sought in its initial letter of August 13, 2018) and Haramos providing incomplete information and incorrectly accusing Underwriters of improper claims handling.

63. On November 4, 2019, counsel for Underwriters sent a letter to all counsel of record in the Underlying Case regarding its coverage defenses and its willingness to attend a mediation subject to those coverage defenses. The letter was sent following the review and approval of Attorney Sullivan.

64. Despite its longstanding and multiple renewed requests, Haramos has never provided Underwriters with:

   i. Any documentation confirming the address of the Olde Theater Diner and confirming that the injury occurred at that specific location (or identifying that location);

   ii. A copy of any automobile insurance policy issued for the pickup truck (or trucks) or snow blower used to clear snow from the parking lot;

   iii. A copy of any insurance policy issued with respect to Haramos's operations or property located at 15 Sandy Bottom Road, Coventry, Rhode Island; and

   iv. Any insurance policy covering the parking lot of the Olde Theater Diner (including one for Palamidi, LLC, the entity which owns another one of the buildings that uses the Olde Theater Diner parking lot).

65. By and through this declaratory judgment proceeding, Underwriters seeks a declaration that Haramos is not entitled to insurance coverage and, therefore, Underwriters does not have a duty to defend or indemnify Haramos for the claims made by Bestwick in the Underlying Case, based on the terms, conditions, and exclusions of the Policy.

## COUNT I

### DECLARATORY JUDGMENT: LESSORS ONLY ENDORSEMENT

66. The allegations set forth in paragraphs 1 through 65 above are re-alleged and incorporated as if fully set forth herein.

67. The Lessors Risk Only Endorsement specifically requires that Olde Theater Diner name Haramos as an Additional Insured under the Olde Theater Diner Policy ("Additional Insured Requirement").

68. Failure to comply with the Additional Insured Requirement voids coverage under the Policy.

69. The Olde Theater Diner Policy does not name Haramos as an Additional Insured.

70. The Lease Agreement provided that the Olde Theater Diner – not Haramos – was responsible for snow plowing of the parking areas and removal of snow and ice on any sidewalks and pathways for the property.

71. Haramos allegedly entered into a separate agreement with Olde Theater Diner wherein Haramos agreed to plow the premises and under which Haramos was paid separately from the Lease

72. The liability of Haramos in the Underlying Case is not based on its role as Lessor because the Lease Agreement made Olde Theater Diner responsible for snow removal and Haramos (or Mr. Melanis) removed the snow and was paid for doing so outside the Lease Agreement.

73. As Haramos failed to comply with the Additional Insured Requirement of the Lessors Risk Only Endorsement, coverage is voided under the Policy and Underwriters does not have a duty to defend or indemnify for any claim asserted by Bestwick.

## COUNT II

### DECLARATORY JUDGMENT: "AUTO" EXCLUSION

74. The allegations set forth in paragraphs 1 through 73 above are re-alleged and incorporated as if fully set forth herein.

75. The Policy does not afford coverage for "bodily injury" arising out of the ownership, maintenance or use and operation of an "auto" that is owned or operated by Haramos.

76. To the extent that the "bodily injury" alleged by Bestwick in the Underlying Cases arises out of the ownership, maintenance or use of an "auto" (that is, the auto or autos used for snow removal owned or operated by Haramos or Mr. Melanis), those claims are precluded from coverage by the "Auto" Exclusion, and Underwriters does not have a duty to defend or indemnify Haramos for any claim asserted by Bestwick.

## COUNT III

### DECLARATORY JUDGMENT: CONTRACT EXCLUSION

77. The allegations set forth in paragraphs 1 through 76 above are re-alleged and incorporated as if fully set forth herein.

78. The Policy precludes coverage for claims arising out of breach of contract, whether oral or written, express or implied, implied-in-law, or implied-in-fact contract.

79. Bestwick seeks damages in the Underlying Case based on the allegation that Haramos agreed to maintain the subject premises, including keeping the parking lot and surrounding areas safe and clear of snow and ice. Olde Theatre Diner makes the same claims in its crossclaim.

80. The Lease Agreement provided that the Olde Theater Diner – not Haramos – was responsible for snow plowing of the parking areas and removal of snow and ice on any sidewalks and pathways for the property.

81. Haramos allegedly entered into a separate agreement with Olde Theater Diner wherein Haramos agreed to plow the premises and under which Haramos was paid separately from the Lease Agreement.

82. To the extent that the claims (and crossclaims) asserted in the Underlying Case are based on a contract, they are not covered by the "Contract" Exclusion and Underwriters does not have a duty to defend or indemnify Haramos for any such claim asserted by Bestwick in the Underlying Case.

## COUNT IV

### DECLARATORY JUDGMENT: UNDECLARED PREMISES AND OPERATIONS

83. The allegations set forth in paragraphs 1 through 82 above are re-alleged and incorporated as if fully set forth herein.

84. The Policy does not does not afford coverage for "bodily injury" arising out of premises or locations owned, leased or rented by the insured that are not scheduled in the Policy.

85. Bestwick alleges that he suffered bodily injury at 33 Sandy Bottom Road, Coventry, Rhode Island.

86. 33 Sandy Bottom Road, Coventry, Rhode Island is not scheduled on the Policy.

87. To the extent the claims (and crossclaims) asserted in the Underlying Case are based on an accident occurring on undisclosed and uninsured premises, the "Undeclared Operations, Premises or Locations" Exclusion within the Combination GL Endorsement – Non Contractors bars over coverage and Underwriters does not have a duty to defend or indemnify Haramos for any claim asserted by Bestwick.

88. Haramos allegedly entered into a separate agreement with Olde Theater Diner separate from the Lease Agreement wherein Haramos agreed to plow the premises and under which Haramos was paid separately from the Lease Agreement.

89. Haramos did not disclose to Underwriters that it was in the snow removal business and a Classification for snow removal was not included on the Underwriters Policy.

1009070\305580253.v1

90. Because there is no coverage for claims arising from undeclared operations as to which no classification appears on the Policy under the "Undeclared Operations, Premises or Locations" Exclusion within the Combination GL Endorsement – Non Contractors, Underwriters does not have a duty to defend or indemnify Haramos for any claim asserted by Bestwick in the Underlying Case.

## COUNT V

### DECLARATORY JUDGMENT: NON-COOPERATION

91. The allegations set forth in paragraphs 1 through 90 above are re-alleged and incorporated as if fully set forth herein.

92. Pursuant to the Policy, Haramos is obligated to cooperate with Underwriters in its investigation of the claim.

93. Pursuant to the Policy, Haramos is obligated to assist Underwriters in the enforcement of any right against any person or organization which may be liable to Haramos because of injury or damage to which the Policy may also apply. This includes other insurers.

94. Haramos failed to cooperate with Underwriters' investigation of its claim.

95. Haramos failed to assist Underwriters in its investigation of the coverage defenses and any rights it may have against any person or organization that may be liable to Haramos because of injury or damage to which the Policy may also apply.

96. To the extent that Underwriters was prejudiced by the failure of Haramos to meet its obligation to cooperate with Underwriters as required by the Policy, Underwriters does not have a duty to defend or indemnify Haramos for any claim asserted by Bestwick in the Underlying Case.

## **PRAYERS FOR RELIEF**

WHEREFORE, Underwriters respectfully requests that this Honorable Court adjudicate and declare the rights of the parties, and that this Court:

(a) Find that Underwriters has no duty to defend or indemnify Haramos as to any claims asserted by Bestwick;

(b) Find that Underwriters is entitled to recovery of any defense expenses paid to Haramos under a reservation of rights; and

(c) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO POLICY NO. ML144200000673

By Their Attorneys,

/s/  *Anthony S. Aprea*
David A. Grossbaum, #6742
dgrossbaum@hinshawlaw.com
Anthony S. Aprea, #9071
aaprea@hinshawlaw.com
HINSHAW & CULBERTSON LLP
56 Exchange Terrace, Suite 500
Providence, RI 02903
401-751-0842
401-751-0072 (facsimile)

Dated: April 16, 2020  _____

1009070\305580253.v1